# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CECIL LLOYD HEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No:  10-cv-45-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Cecil Lloyd Head seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382c(a)(3).  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.  [Dkt. # 14].  Any appeal of this Opinion and Order will be directly to the Tenth Circuit.

## Procedural History and Standard of Review

On July 2, 2007, plaintiff filed an application for supplemental security income benefits alleging disability due to chronic low back pain (resulting from a work related injury on January 15, 2007), chronic right leg pain, major depressive disorder, general anxiety disorder, sleep disturbance, fatigue, poor memory, and poor concentration.  [Dkt. # 22 at 1-2].  After being denied benefits, plaintiff filed a written request for a hearing before an ALJ on February 29, 2008.  The ALJ conducted a hearing on April 7, 2009.  On May 13, 2009, the ALJ issued her decision, denying benefits.  Following the decision, the Appeals Council denied plaintiff's request for review on November 25, 2009.  The decision of the Appeals Council represents the

Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481. On January 1, 2010, plaintiff timely filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports the decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant adjudicated period. 20 C.F.R. § 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C. § 423 (d)(3); 20 C.F.R. § 416.913.

## Issues on Appeal

Plaintiff asserts that the ALJ made the following three errors:

(1)     The ALJ erred in determining plaintiff's major depressive disorder and general anxiety disorder are "non-severe" at step two of the sequential evaluation process, despite clear evidence which exceeds the *de minimus* standard related to this part of the ALJ analysis.

(2)     The ALJ erred in not giving greater weight to the expert medical opinion of Lindsey Brooks, Psy.D., an evaluating psychologist, who identified functional limitations that are clearly disabling.

(3)     The ALJ erred in stating that opinions from Dr. Ipsen and Dr. Mangels are "consistent" with the RFC adopted by her to perform "light work."

[Dkt. # 22 at 3].

## Background

Plaintiff was born on January 16, 1961, and was forty-eight at the time of his hearing before the ALJ. [R. 16, 19]. Plaintiff was 6'1" tall and weighed 130 pounds at the time he filed his claim. [R. 188]. He dropped out of school in the eleventh grade and never obtained a GED. [R. 266]. Plaintiff has worked as a mechanic, an assembler, and a salvage laborer. [R. 50-51]. He is single and lives with his mother in her home. [R. 31]. He consumes two packs of cigarettes and ten cups of coffee daily and has been convicted of six DUI's. [R. 266, 267]. Plaintiff has a history of various back problems, none of which have resulted in surgery. [R. 276]. Plaintiff asserts that he stopped working on January 15, 2007, as a result of a work related back injury. [R. 118, 276]. Plaintiff had been previously diagnosed with mild desiccation or degeneration of intervertebral discs at L2-3, L3-4 and L4-5, and mild to moderate central disc bulging at L4-5 producing a mild to moderate spinal stenosis. [R. 218]. Plaintiff subsequently claimed a heart condition that he admits is uncorroborated by medical evidence. [Dkt. # 22 at 5; R. 47-48, 133]. Plaintiff has self-prescribed the use of a cane for walking and has seen a

multitude of doctors and chiropractors for treatment of his physical injuries.[1] [R. 33-34]. His treatment has led to the prescription of various pain medications, including Tramadol (from two to eight 50 mg doses a day). [R. 267, 277]. Plaintiff has never undergone surgery for his spinal issues, and his doctors have postulated that surgery would have a less than 50% chance of improving his condition. [R. 341]. Doctors that have been involved in the treatment of plaintiff's spinal issues include: Brian Ispen, M.D., a treating orthopedic surgeon retained for a prior worker's compensation claim, who the ALJ has acknowledged saw plaintiff thirteen times [R. 16]; Kevin Mangels, M.D., an evaluating spinal surgeon who was retained by plaintiff's attorney [R. 281]; John Knudson, III, M.D., a treating pain management specialist, whom plaintiff was referred to by Dr. Ipsen [R. 161]; and Kenneth R. Trinidad, D.O., an evaluating osteopathic specialist from whom plaintiff sought a second opinion to Dr. Ispen. [R. 187].

Additionally, plaintiff was diagnosed with major depressive disorder and general anxiety disorder by Lindsey Brooks, Psy.D. on February 27, 2009. [R. 269]. Plaintiff had a single visit with Dr. Brooks lasting two hours. [R. 260]. Before seeing Dr. Brooks, plaintiff had been taking an antidepressant medication called amitriptyline, prescribed by Dr. Knudson to help with depression and sleep. [R. 41]. Plaintiff alleges that he did not struggle with depression for more than a year before consulting Dr. Brooks. [R. 260]. The record does not reflect that additional counseling was sought after the meeting with Dr. Brooks.

### The ALJ's Decision

The ALJ found that plaintiff had not engaged in any substantial gainful activity since July

---

[1] Medical records concerning plaintiff's physical injuries by all physicians and chiropractors can be found at R. 152-258, 274-391 also known as exhibits 1F-7F, 10F-15F.

2, 2007. [R. 11]. The ALJ next found at step two of the five-step sequential evaluation process[2]

that plaintiff's mental disorders were non-severe using the listings in appendix 1 of subpart P of

20 C.F.R. 404. [R. 11-13]. Subsequently, the ALJ made a finding at step five that while plaintiff

could not perform his past relevant work, he had the residual functional capacity (RFC) to

perform the full range of sedentary work as defined by 20 C.F.R. 416.967(a) with certain

limitations. [R. 14]. Based on the testimony of the vocational expert, the ALJ found that

plaintiff could find employment as an assignment clerk or a radio dispatcher. [R. 20].

## Discussion

### I. Issue One

First, plaintiff asserts that the ALJ erred in finding that his depressive disorder is not a

severe impairment. [Dkt. # 22 at 3]. The threshold for finding that an impairment is severe is

relatively low. Bowen v. Yuckert, 107 S. Ct. 2287 (1987). A finding of non-severity is proper

when the evidence establishes only a slight abnormality which has no more than a minimal effect

on a claimant's ability to do basic work activities. SSR 85-28. At step two, the ALJ is to assess

a plaintiff's performance of "basic work activities" in conjunction with the alleged impairment.

If the severity of the impairment cannot be clearly determined, step two should be skipped in

favor of moving to step three and the remaining steps of the sequential evaluation until a

determination regarding disability can be reached. SSR 96-3p. If the ALJ is doubtful about the

severity of the symptoms, the plaintiff should be given the benefit of the doubt. Id. Basic work

---

[2] The five-step sequential process provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

activities include:  the ability to perform required physical functions; the capacity to speak, see, and hear; the ability to understand or carry out simple instructions; the use of judgment; the ability to respond appropriately to supervision; and the ability to deal with changes in routine. 20 C.F.R. § 416.945(b)(c).

In finding that plaintiff's mental impairments were non-severe, the ALJ correctly cited Section 12.04 (affective disorders) for the criteria to be considered in determining the severity of an alleged major depressive disorder impairment.  Section 12.04 provides that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. § 404, subpart P, App. 1.  The ALJ also correctly identified the "C" criteria.  The ALJ then correctly cited Section 12.06 (anxiety related disorders) for the criteria to be considered in determining the severity of an alleged general anxiety disorder impairment.  Next, the ALJ stated her finding:

> The claimant's medically determinable mental impairments of major depressive disorder and general anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work actives and are therefore non-severe.

[R. 12].  To this point, the ALJ's decision is without error.

Next, the ALJ states that she considered "the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)."  [R. 12].  In doing so, the ALJ stated:

> *Activities of daily living* include . . ..  In the context of the claimant's overall situation, I have assessed the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  In regard to the claimant's restriction of daily activities the claimant is mildly limited.
>
> *Social functioning* refers to . . ..  As for claimant's social functioning, he is mildly restricted.

> *Concentration, persistence, or pace* refers to . . ..  Regarding the claimant's concentration, persistence or pace, he is also mildly limited in this area.
>
> *Episodes of decompensation* are . . ..  As to whether the claimant has experienced any episodes of decompensation of extended duration, the record fails to establish he has had any such episodes.

[R. 13].

First, the Court agrees that the record fails to establish that plaintiff has had any episodes of decompensation.  This finding is affirmed.  Second, a thorough review of the record supports the ALJ's findings with regard to the remaining three broad functional areas.  But the ALJ failed entirely to explain her findings with respect to the other three areas.  She merely identified the criteria and then stated her conclusion, all of which involved affirmative statements about plaintiff's limitations.  Presumably, something specific in the record caused the ALJ to conclude that plaintiff was "mildly limited" in his activities of daily living, "mildly restricted" in his social functioning, and "mildly limited" in concentration persistence, or pace.  Unfortunately, whatever the ALJ relied on is not identified in her decision.  As already stated, the Court believes the record supports the ALJ's findings, but it is not the role of the Court to conduct a *post hoc* review in an effort to support the ALJ's decision.

On remand, the ALJ should identify those portions of the record which she believes support her finding that plaintiff's mental impairments are not severe.

**B. Issue Two**

Next, plaintiff argues that the ALJ erred in not giving greater weight to the expert medical opinion of Dr. Brooks, an evaluating psychologist.  The plaintiff was seen by Dr. Brooks on February 27, 2009, for a single, two hour examination.  [R. 260].  Dr. Brooks' report

diagnoses plaintiff with major depressive disorder and general anxiety disorder.[3] [R. 260]. Plaintiff contends that the resulting report was wholly rejected by the ALJ. [Dkt. # 22 at 7]. Plaintiff is clearly wrong. The ALJ specifically stated that she gave the "proper weight" to Dr. Brooks' report. Thus, the ALJ clearly considered the report. Nonetheless, the ALJ failed to state what she meant by "proper weight" and failed to identify the evidence in the record that supported her conclusion. [R. 18]. Rather, the ALJ merely noted that Dr. Brooks inaccurately reported that plaintiff was a female in the conclusion of her report.

Additionally, the ALJ stated that "Dr. Brooks also completed a Medical Source Statement-Mental (MSS) reflecting a prognosis of fair (Exhibit 8F). Dr. Brooks' MSS is not supported by her evaluation or by claimant's subjective complaints." [R. 18]. Although the Court generally agrees with the ALJ, plaintiff has correctly pointed out that the ALJ did not explain her statement or cite a single example from the record to support her statement. [Dkt. # 22 at 8]. Certainly, the ALJ may discount medical evidence when it is internally inconsistent or inconsistent with other evidence. Pisciotta v. Astrue, 500 F. 3d 1074, 1078 (10th Cir. 2007). However, the ALJ must support a finding that medical evidence was inconsistent with her own cited to the record. Id. As was explained in Watkins, the law requires that an ALJ explain the weight given to a physician, meaning that the ALJ must define what he or she means when using the word "proper." 350 F. 3d 1297, 1301. This Court ". . .must remand because [it] cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned. . .". Id.

---

[3] This Court notes that were a determination of disability to be made on the basis of Dr. Brooks' report, the January 15, 2007 onset date would be inaccurate as Dr. Brooks states that plaintiff's mental disorders did not develop until a year before her February 27, 2009 examination. [R. 269]. See also 20 C.F.R. 416.330.

On remand, the ALJ should state what she means by "proper weight," and she should provide citations to those portions of the record which she believes support her statement.

**C. Issue Three**

Plaintiff asserts that the ALJ erred in finding that the opinions of Dr. Ipsen and Dr. Mangels are "consistent" with the RFC. [Dkt. # 22 at 9]. An ALJ may not simply state a finding of fact in a conclusory fashion, without reference to those portions of the record with which the analysis was consistent. Krauser v. Astrue, 2011 WL 1718892, 5 (10th Cir. May 6, 2011). Here, the ALJ simply concluded that these doctors' opinions were consistent with the RFC analysis and then said no more. [R. 18]. While it appears that support for this contention is in the record, failure to cite that support requires remand. On remand, the ALJ should cite to those portions of the record that support her finding that Dr. Ipsen's and Dr. Mangels' opinions are consistent with the RFC.

Finally, plaintiff further contends that even if there were support in the record for the consistency between RFC analysis and medical opinions, these doctors likely do not understand what the term "light work" or even "sedentary work" entail in Social Security regulation contexts. [Dkt. # 22 at 9]. This argument is rejected, as is plaintiff's argument that Dr. Trinidad misused the term "light duty" at R. 190.

## Conclusion

Based on the foregoing, the Court **REMANDS** this case for further proceedings consistent herewith. To the extent not otherwise stated, the ALJ's decision is affirmed.

SO ORDERED this 1st day of June, 2011.

_____
T. Lane Wilson
United States Magistrate Judge